UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

THE WISCONSIN ASSEMBLY DEMOCRATIC
CAMPAIGN COMMITTEE,

     Plaintiff,

                                 Case No. 3:18-CV-

v.

                                 00763

BEVERLY R. GILL, JULIE M. GLANCEY,
ANN S. JACOBS, JODI JENSEN, DEAN KNUDSON,
and MARK L. THOMSEN,

     Defendants.

## BRIEF IN SUPPORT OF WISCONSIN STATE ASSEMBLY'S MOTION TO DISMISS

## INTRODUCTION

The First Amendment does not guarantee that speech will be successful. The First Amendment does not require that government pass only those laws that will not dispirit this group or that from engaging in associational activities. And the First Amendment certainly does not require the legislature to pass laws that provide power associational groups (or give them more likely access to power) so that their members will be incentivized by that carrot to engage in associational activities.

What the First Amendment governs (though does not necessarily prevent), is when the government: prohibits expressive activity; punishes expressive activity; imposes pecuniary or non-pecuniary costs on expressive activity; or conditions a government benefit on expressive activity.

2011 Wisconsin Act 43 does none of those things, and plaintiff does not allege it does any of those things. The law merely defines the geographic boundaries of legislative districts.

Plaintiff fails to state a claim for which relief may be granted, and this action should be dismissed.

## I.    FACTUAL AND LEGAL BACKGROUND: ALLEGATIONS AND CLAIMS ASSERTED IN THE COMPLAINT

Under Wisconsin's Constitution, the legislature must apportion the state into legislative districts after every federal census.[1]  2011 Wisconsin Act 43 fulfilled that obligation for the current decennial.  The Act divides the state into 99 Assembly districts and 33 Senate Districts.[2]  The Assembly districts comprised by Act 43 are what plaintiff refers to as the "Current Plan." (*Compl.*, ¶ 1).

Plaintiff, the Wisconsin Assembly Democratic Campaign Committee ("ADCC"), is "a legislative campaign committee" under state law that includes as its membership "thirty-five sitting Democratic representatives in the Wisconsin State Assembly."  (*Id.* at ¶ 9).

According to the Complaint, ADCC "work[s] to elect Democrats to the State Assembly."  (*Id.*).  To that end, they engage in numerous activities relating to elections.  These include (1) soliciting campaign contributions, (2) recruiting

---

[1] Wis. Const. Art. IV, § 3.

[2] 2011 Wisconsin Act 43, §§ 1, 7; *codified at* Wis. Stat. §§ 4.001 & 4.01-4.99.

Democratic candidates for office; (3) providing candidates with campaign advice on strategy, messaging, and related matters; and (4) cooperating with like-minded organizations." (*Id.*).  Their ultimate goal is "to translate electoral success into enacted policies that reflect Democratic values and benefit all Wisconsinites." (*Id.*).

ADCC alleges that "one purpose of Act 43 was to secure the Republican Party's control over the State Legislature." (*Id.* at 11).  ADCC alleges that "the Current Plan creates an "intentional, large, durable, and unjustified pro-Republican asymmetry," that "severely burdened the Assembly Democrats' associational rights." (*Id.* at ¶ 26.) In "cracked" districts—those legislative districts ADCC allege are drawn to "ensure Republican victories"— ADDC's "ability to perform their associational functions is impaired by the reality that no matter what they do, Democratic defeat is highly probable." (*Id.*).  In "packed" districts—those alleged to "guarantee Democratic candidates' victories by enormous margins"—ADCC has "a reduced incentive to conduct their associational activities" since these activities are unnecessary to win elections. (*Id.*).  And in all districts, ADCC alleges that their "associational activity" is "hamstrung" by the fact the Current Plan "prevents them from obtaining a legislative majority (absent a pro-Democratic wave of unprecedented size)." (*Id.*).

ADCC further alleges that (1) their candidates have been outraised by Republican competitors; (2) party volunteer participation is down; (3) they have had more difficulty attracting independent voters; (4) they have had difficulty attracting candidates; and (5) they have had difficulty accomplishing their policy objectives. (*Id.*

at ¶¶ 27-31).  The complaint alleges that the Current Plan is the cause of each of these phenomena.  (*Id.*).

ADCC's complaint claims Act 43 violates ADCC's associational rights guaranteed by the First Amendment.[3] (*Id.* at ¶1). It seeks a declaration that Act 43 is unconstitutional, an injunction preventing any further elections from being conducted that use the districts drawn by Act 43, and judicial reapportionment, should a new remedial law not be enacted in a timely manner.  (*Id.* at ¶ 40-42).

These are the material allegations relevant to this motion.

## II.   Pleading Standards For Analyzing Motions To Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'"[4] Allegations that are pure legal conclusions or legal conclusions couched as a factual allegations, however, are not accepted as true.[5] Although "detailed factual allegations" are not required, the complaint must contain more than "'naked assertions' devoid of 'further factual enhancement.'"[6] "[B]are and conclusory allegations … are insufficient to state a claim."[7]

---

[3] Compl., ¶ 1.

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Id.*

[6] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[7] *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583,  (7th Cir. 2016).

Thus, to determine the sufficiency of a complaint, courts "first identif[y] the well-pleaded factual allegations by discarding the pleadings that are 'no more than conclusions'" and "then determine whether the remaining well-pleaded factual allegations" "plausibly suggest a claim…."[8]

ADCC claims the Current "Plan imposes severe burdens" on ADCC associational rights,[9] but this is the definition of a conclusory allegation. The Court must instead look to the well-pleaded factual allegations to determine whether any of them describe the type of burden that implicates a First Amendment interest. As explained below, they do not.

### III.   Plaintiffs Have Failed To Allege A "Burden" That Implicates The Possible Impairment Of A First Amendment Right

Plaintiffs' "Burden on Association" claim fails for a simple reason: because what Plaintiffs call a "burden" is nothing more than an allegation that their expressive associational activity is now less successful and therefore they have less incentive to engage in it.[10] This is not a "burden" that implicates a First Amendment interest.

Act 43 does not bear any of the hallmarks of burdening expressive activity. It does not prohibit any expressive activity; does not impose costs on the exercise of any expressive activity; does not regulate the internal affairs of the Democratic party, its

---

[8] *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 679).

[9] *See, e.g.,* Compl., ¶ 1.

[10] *See, e.g.,* Compl., ¶¶26-32.

relationship with supporters, or its supporters' relationship with one another; does not chill the exercise of any associational right by raising the specter of fine, penalty, or, arbitrary enforcement; and does not require Plaintiffs to forego a right or tangible benefit in order to associate. The Court should dismiss Plaintiffs' claim that the First Amendment guarantees associations a static level of popularity.

The Supreme Court has explained that the right to associate, outside the context of intimate relationships (not applicable here), involves the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion," also known as "expressive association."[11]

The first step in analyzing an association claim, then, is whether there is an allegation of associational expressive activity. Here, we concede that some (though not all) of the underlying associational activities mentioned in the Amended Complaint involve expressive activity that may fall within the ambit of First Amendment protection.[12] But merely because an associational expressive activity is

---

[11] *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984).

[12] For example, ADCC is engaged in campaign fundraising. Compl., ¶¶ 9, 27. Donating and raising campaign funds is expressive activity protected (though not absolutely) by the First Amendment. *See, e.g., Randall v. Sorrell*, 548 U.S. 230, 248 (2006). But ADCC also claims its ultimate aim is to "translate electoral success into enacted policies...." *Compl.*, ¶ 9. No judicial decision, to our knowledge, would extend the First Amendment to policy implementation as opposed to advocacy for a policy position. The opposite is true. "Although the First Amendment protects political speech ..., it does not protect the right to make law, by initiative or otherwise...." *Initiative and Referendum Institute v. Walker*, 450 F.3d 1082, 1100 (10th Cir. 2006).

alleged to be *effected* by a law does not mean a complaint has alleged a *burden* necessary to state a plausible First Amendment claim.

The paradigm expressive association infringement, of course, is when political speech is banned.  As the Court explained in *Citizens United*, "If the First Amendment has any force, it prohibits Congress for fining or jailing citizens, or associations of citizens, for simply engaging in political speech."[13] Act 43 does not ban or impose any sanction on engaging in speech, whether by Democrats, Republicans, or otherwise, and voter-plaintiffs do not contend that it does.

Expressive activity is "burdened" when laws or regulations impose a requirement or duty on a speaker or association when they speak. Campaign disclosure and disclaimer regulations are one example. As the Court stated in *Citizens United*, "disclaimer and disclosure requirements may burden the ability to speak, but they impose no ceiling on campaign-related activities and do not prevent anyone from speaking."[14]  For this reason, disclaimer and disclosure requirements are subject to "exacting scrutiny,"[15] something closer to intermediate scrutiny than strict scrutiny.

Describing the burden at issue in *Citizens United* and the "burden" claimed here helps illustrates that Plaintiffs are not claiming a state-imposed burden at all.

---

[13] *Citizens United v. Federal Election Com'n*, 558 U.S. 310, 349 (2010).

[14] *Citizens United*, 558 U.S. at 366 (cleaned up to remove internal quotations and citations).

[15] *Id.* at 366-67.

The burdening (though upheld) law at issue in *Citizens United* required speakers to identify in their televised political-speech advertisements the person or group responsible for the ad's content. Specifically, the law compelled speakers to devote valuable airtime to audio of the disclaimer and valuable screen space to displaying the disclaimer—40% of time of some of the law's challengers' promotional ads.[16]  In essence, the law required speakers to *do something* in exchange for the right to engage in expressive activity.  That "something" was the burden.

Here, Act 43 does not require voter-plaintiffs to *do anything* in exchange for the ability to speak.  Instead, the government-imposed "cost" of speech is the same today as it was before Act 43 passed.

And plaintiffs' "burden" is not of a kind with other burdens held by the Supreme Court to be First Amendment violations.[17]  For example, Act 43 does not disqualify Voter-Plaintiffs from public benefits or privileges as a result of their associations,[18] does not compel plaintiffs to associate with others to whom they do not wish to associate as a condition of engaging in First Amendment activity,[19] and does

---

[16] *Id.* at 366.

[17] *See Clingman v. Beaver*, 544 U.S. 581, 587 (2005) (listing cases and holdings of Supreme Court decisions finding infringements of expressive associational rights).

[18] *See, e.g., Elrod v. Burns*, 427 U.S. 347, 351, 372-73 (1976) (sheriff's deputies may not be discharged solely because they did not support Democratic Party); *Keyishan v. Board of Regents*, 385 U.S. 589, 595-96, 604 (1967) (public employment may not be conditioned on loyalty oaths requiring non-affiliation with Communist Party).

[19] *California Democratic Party v. Jones*, 530 U.S. 567, 577 (2000).

not prevent new persons from affiliating with the voter-plaintiffs and democrats after a given date.[20]

In fact, Act 43 does not impose any restriction, impairment, or regulation of voter-plaintiffs' speech.  It is not the fear of fine, sanction, or cost affecting Plaintiffs' expressive association activities. It is their fear that their speech will fail at achieving their ultimate ends.  In short, what they call a "burden on association" is simply a claim that their associational activities are less likely to be successful.

That is not a cognizable First Amendment burden.  The Tenth Circuit case of *Initiative and Referendum Institute v. Walker*[21] neatly captures the problems with Plaintiffs' burden on association theory.  In that case, Utah amended its constitution to require a super-majority to pass certain laws relating to taking wildlife.[22]  The plaintiffs argued that this made it very difficult to secure passage of a wildlife initiative, and that this in turn "dispirited" their organizational activities and caused them to feel "marginalized" and "silenced." In a nutshell, plaintiffs in that case alleged analogous burdens to those alleged here.

The Tenth Circuit rejected the claim.  Citing United States Supreme Court decisions, the court explained, "there is a crucial difference between a law that has the 'inevitable effect' of reducing speech because it restricts or regulates speech, and

---

[20] *See Tashijan v. Republican Party of Conn.*, 479 U.S. 208, 210-11, 217-25 (1986).

[21] 450 F.3d 1082 (10th Cir. 2006).

[22] *Id.* at 1086.

a law that has the 'inevitable effect; of reducing speech because it makes particular speech less likely to succeed."[23] The Tenth Circuit concluded by noting that plaintiff's "constitutional claim begins … from a basic misunderstanding. The First Amendment ensures that all points of view ay be heard; it does not ensure that all points of view are equally likely to prevail."[24]

Given the Complaint's insistence on assessing the legislature's intent in enacting the current plan,[25] it is possible that ADCC is asserting a species of a retaliation claim.   (Otherwise, it is not clear why intent matters; the First Amendment is concerned with infringement).   A retaliation claim may lie where government penalizes a citizen or deprives him of a benefit *because of his protected speech activities.*[26] ADCC has not alleged that the Current Plan was to harm them (or their supporters) for engaging in expressive conduct such as contributing funds or volunteering or generally participating in the political process or advocacy. Retaliation claims are "but-for" cause claims;[27] if the legislature possessed a motive other than retaliation for passing the law, there is no retaliation claim. Here, ADCC

---

[23] *Id.* at 1100 (citing *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 790 n. 5 (1988) (stressing the difference between "a statute regulating how a speaker may speak" and a statute with a "completely incidental impact" on speech, which does not implicate the First Amendment); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 671–72 (1991) (rejecting a challenge to a state court's application of promissory estoppel to a newspaper's promise of anonymity to a confidential source, in part because any effect on First Amendment freedoms was "self-imposed," "no more than incidental, and constitutionally insignificant").

[24] *Id.* at 1101.

[25] *See, e.g.,* Compl., ¶¶ 11-17.

[26] *See, e.g., Hartman v. Moore*, 547 U.S. 250, 266 (2006); *Perry v. Sinderman*, 408 U.S. 593, 597 (1972).

[27] *Hartman*, 547 U.S at 260 ("retaliatory animus" must be the "cause of the injury.")

affirmatively alleges another motivation: "to secure the Republican Party's control of the state legislature."[28] Control of the legislature is not a protected associational activity.[29]

And even if ADCC could get past this requirement that they allege a but-for cause relating to punishing expression, they still must show that the Act would "deter a person of ordinary firmness from exercising their First Amendment Rights."[30]   It fails *Iqbal*'s plausibility standard to conclude that likely minority-party status would cause a political organization of ordinary firmness to stop advocating for its policies and participating in political speech.  The existence of third parties proves the point. At any rate, ADCC has not alleged that they are no longer exercising their First Amendment Rights, but that they do so less.

Moreover, the implications of ADCC's theory that *any* law that has the intent and effect of making one political group more attractive to its members and potential members than another political group are gigantic.  It would make countless legislation a First Amendment violation.  Consider a broadly popular election-year tax-cut passed on party lines by a Republican-controlled legislature that is solely motivated by the fact it will make the Republicans attractive to voters in November, and in fact makes it extremely unlikely Democrats will win a majority.  Or an

---

[28] Compl., ¶ 11.

[29] *Initiative and Referendum Institute*, 450 F.3d at 1100 (10th Cir. 2006) ("Although the First Amendment protects political speech …, it does not protect the right to make law, by initiative or otherwise….")

[30] *See, e.g., Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).

election-year college loan forgiveness act passed by Democrats on party lines, known by Democrats to have significant consequences to public fisc, but is so broadly popular that it will virtually secure their majority.  Legislative majorities pass laws to make them attractive to voters.  That is not a bug in the system; but one of the core features of representative democracy.

Last, the cases ADCC cites in its complaint are easily distinguishable. *Anderson v. Celebrezze* and *Burdick v. Takushi*, cited as legal support for Plaintiffs theory,[31] do not help Plaintiffs to overcome the obvious hurdle that Act 43 imposes no costs, conditions, or restrictions on expressive association.  *Anderson* and *Burdick* were variations of ballot-access cases.  *Anderson* involved a state law (held to be unconstitutional) that *prevented* Independent candidates from appearing on a general election ballot if signatures were not gathered by mid-March of the election year while *allowing* the major party nomination process to continue for another five months.[32] The burden imposed by the law was that Independents had a compressed timeline to engage in pre-nomination activities as compared with Democrats or Republicans. Put differently, Independents were *prevented* from engaging in pre-nomination associational activity during spring and early summer while the Democrats and Republicans were able to do so.  And most obviously, Independent

---

[31] Compl., ¶ 36.  Plaintiffs also cite *Crawford v. Marion County*, 553 U.S. 181 (2008) Compl., ¶ 38. *Crawford* did not have a majority opinion, and Justice Stevens' lead opinion was joined by only two other Justices.  At any rate, *Crawford* still involved an alleged burden to an underlying right.

[32] *Anderson v. Celebrezze*, 460 U.S. 780, 790-91 (1983).

voters could not check a box to select their candidate on their ballots whereas Democrats and Republicans could.

*Burdick* involved a state law (held to be constitutional) that prevented write-in voting,[33] and thus prevented a form of speech at the ballot box and implicitly burdened at least a portion of those wishing to vote for a candidate to engage in the activities (expressive and otherwise) necessary to place a candidate on the ballot if that candidate were to receive a vote.

Act 43 does not impose any legal requirements that would treat ADCC or its voter-supporters differently than other group with respect to ballot access or the ability to engage in political activity.  Nor does it prevent ADCC's members' supporters from casting a ballot for the candidate of their choice.  Act 43 is completely silent on these matters.

Plaintiff's citations to Justice Kagan's concurring opinion in *Gill* or the three-judge district court's recent decision in *Rucho* persuasive. Justice Kagan's concurring opinion involved, in the opinion of the Court, "speculative and advisory conclusions" about a case not before the Court that involved "allegedly different burdens."[34] And in offering the concurring opinion, Justice Kagan did not cite a single majority opinion that supports the idea that a government-imposed "burden" may exist without

---

[33] *Burdick v. Takushi*, 504 U.S. 428, 441 (1992).

[34] *Gill*, 138 S.Ct. at 1931.

13

government-imposed restriction, limitation, or condition on expressive associational activity.

As for *Rucho*, district court opinions are not authoritative, and the case is being appealed.[35] Many other district courts have rejected First Amendment claims in far more persuasive opinions. In fact, the Supreme Court has summarily affirmed district court decisions rejecting First Amendment political gerrymandering claims similar to the claim presented here, and summary affirmances have precedential value.[36] We provide three examples.

1. In *Badham v. March Fong Eu*, a group of Republican congressional representatives and Republican voters challenged California's congressional districting law as a Democrat gerrymander that "diluted the strength of Republican voters."[37] In rejecting plaintiffs' First Amendment claim that they were being penalized for their affiliations and chilled in public debate about issues of public importance, the Court distinguished *Anderson* on the basis that the voters could still vote for the party and candidate they wished and found their "chilled speech"

---

[35] *See Common Cause v. Rucho*, Nos. 1:16-cv-1026; 1:16-cv-1164 at 3 (M.D.N.C., Sept. 4, 2018) (acknowledging defendants had filed a notice of appeal) (available in publicly accessible electronic database in PACER, Dkt & 150).

[36] *Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975) (quoting Second Circuit with approval, stating "lower courts are bound by summary decisions by this Court until such time as the Court informs them that they are not") (cleaned up); *but see Mandel v. Bradley*, 432 U.S. 173, 176 (stating that "a summary affirmance is an affirmance of the judgment only, the rationale of the affirmance may not be gleaned solely from the opinion below" and is to be given "appropriate, but not necessarily conclusive, weight").

[37] *Badham v. March Fon Eu*, 694 F. Supp. 664, 667 (N.D. Cal. 1988), *sum. aff'd*, 488 U.S. 1024 (1989).

14

assertion to be "wholly without merit": "While plaintiffs may be discouraged by their lack of electoral success, they cannot claim [the districting law] regulates their speech or subjects them to any criminal or civil penalties for engaging in expression."[38]

2. In *League of Women Voters v. Quinn*, the district court rejected the notion that a districting plan could constitute an impairment of expressive rights because "it brushes aside a critical first step to bringing a content-based First Amendment challenge: the challenged law must actually restrict some form of protected expression.  It seems a rather obvious point."[39]

3. In *Anne Arundel County Republican Cent. Committee v. State Administrative Bd. of Election Laws*, the district court dispatched with plaintiffs' First Amendment claim because "nothing about [the districting law] affects in any proscribed way plaintiffs' ability to participate in political debate…. They are free to join pre-existing political committees, form new ones, or use whatever other means are at their disposal to influence the opinions of their congressional representatives."[40]

---

[38] *Id.* at 675.

[39] Case No. 1:11-cv-5569, slip op. at 4 (N.D. Ill. Oct. 28, 2011) (available in publicly accessible database on PACER, Dkt #34) (dismissing First Amendment political gerrymandering claim), *sum. aff'd*, 566 U.S. 1007.

[40] 781 F. Supp. 394, 401 (D. Md. 1991), *sum. aff'd* 504 U.S. 938 (1992).

These summarily affirmed decisions are precedential and should be applied here.  Plaintiff has not alleged a First Amendment claim for which relief may be granted.

## CONCLUSION

There is an irony in ADCC's claim.  Plaintiffs claim that the Current Plan contains too many districts with majorities who vote for ADCC's rivals, dispiriting ADCC's supporters and quelling their desire to participate in associational expressive conduct. The First Amendment does not provide *protection* from that condition; it embodies the theory that contains the *solution* to ADCC's grievance.  Advocate, convince other voters to change their mind, double down efforts to attract independents, participate in the marketplace of ideas. Unless citizens are inflexible and immutable partisans – a description that defeats the entire justification for the Constitution's broad commitment to protecting political speech – then a convincing message can win.

Moreover, political speech is a two-way street.  Candidates and parties must listen to their constituencies, however lines are drawn, and find platforms, policies, and messages that address their concerns. The First Amendment does not protect ADCC, or any other political organization, from this dialogue.

For the foregoing reasons, plaintiffs fail to state a claim for which relief can be granted and this action should be dismissed.

Respectfully submitted this 5th day of October, 2018.

**BELL GIFTOS ST. JOHN LLC**

/s/ Kevin St. John
Kevin St. John, SBN 1054815
5325 Wall Street, Suite 2200
Madison, WI 53718-7980
Ph. 608-216-7990
Fax 608-216-7999
Email:  kstjohn@bellgiftos.com

**Attorneys for Wisconsin State Assembly**

17