# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

WILLIAM WHITFORD, et al.

    Plaintiffs,

v.

BEVERLY R. GILL, et al.,

    Defendants;

and

THE WISCONSIN STATE ASSEMBLY,

    Intervenor-Defendant.

Case No. 3:15-CV-00421-jdp

---

THE WISCONSIN ASSEMBLY DEMOCRATIC
CAMPAIGN COMMITTEE,

    Plaintiff,

v.

BEVERLY R. GILL, et al.,

    Defendants;

and

THE WISCONSIN STATE ASSEMBLY,

    Intervenor-Defendant.

Case No. 3:18-CV-00763-jdp

---

**THE WISCONSIN STATE ASSEMBLY'S REPLY BRIEF
IN SUPPORT OF ITS EMERGENCY MOTION TO STAY**

Plaintiffs protest that a temporary stay of these proceedings would deny them the opportunity to "obtain any meaningful relief for the 2020 elections."[1] A stay will not deny Plaintiffs meaningful relief. But pressing ahead could. Trying this case before the United States Supreme Court establishes a legal framework for Plaintiffs' claims—if those claims are justiciable—would be extraordinarily inefficient is bound to result in wasted resources. A stay is the only way the parties and the Court can be sure that we are not back here for a third trial.

A stay is in the interests of judicial economy, would promote fairness, and is more likely to provide Plaintiffs an opportunity for meaningful relief than proceeding without guidance from the Supreme Court. The Assembly requests that the Court grant a stay.

I. **The Interest of Judicial Economy Weighs Heavily in Favor of a Stay**

In *Rucho* and *Benisek*, the Supreme Court will address all three issues Plaintiffs have asked this Court to consider on remand: standing, voter dilution claims, and First Amendment associational claims predicated on an alleged partisan gerrymander.[2] More fundamentally, the Supreme Court is

---

[1] Dkt. 239, Case No. 3:15-CV-00421-jdp, Opp'n to Assembly's Mot. to Stay ("Opp'n") at 2.

[2] *Compare* Dkt. 229, Pltfs.' Opp'n to Assembly's Mot. to Dismiss at 24 (requesting rulings on "(1) partisan vote dilution standing; (2) how to state and implement a district-specific test for partisan vote dilution; and (3) the associational theory of partisan gerrymandering"), *with Rucho v. Common Cause*, No. 18-422, Appellants' Jurisdictional Statement at 16-23 (standing); *id.* at 29-31 (testing voter dilution claims); *Lamone v. Benisek*, No. 18-726,

1

likely to address the (potentially dispositive) threshold question in all three cases: whether partisan gerrymandering claims are justiciable.[3]

Plaintiffs agree that, without a stay, this case will likely be tried and briefed before the Supreme Court issues its decisions in *Rucho* and *Benisek*. *See* Opp'n 2. That alone compels a stay. There is no reason to proceed with discovery (including additional expert reports and more than 30 depositions), a four-day trial, and substantial post-trial briefing before the Supreme Court announces the ground rules that govern the claims. And if the Court determines that these claims are nonjusticiable, then all of that work will be for naught. No second trial will be necessary.

Even if the Court recognizes partisan gerrymandering claims, pressing ahead with a trial and post-trial briefing is nothing but an invitation for the Supreme Court to again vacate this Court's decision and to require a third trial of Plaintiffs' claims. There is no reason to believe that after the Supreme Court issues further guidance in *Rucho* and *Benisek*, it would not summarily vacate and remand any related partisan gerrymandering cases, including this case. That is what the Supreme Court did last Term, following its decision in

---

Appellants' Jurisdictional Statement at 16–18 (testing First Amendment associational claims).

[3] *See Rucho v. Common Cause*, No. 18-422, Appellants' Jurisdictional Statement at 23-28 (arguing partisan gerrymandering claims are nonjusticiable); *see also Benisek v. Lamone*, 266 F. Supp. 3d 799, 805 (D. Md. 2017) ("[T]he Supreme Court's decision to hold over the jurisdictional question for argument is a strong signal that the [justiciability] question remains unsettled in the minds of the Justices.").

*Gill*. *See, e.g.*, *Rucho v. Common Cause*, 138 S. Ct. 2679 (2018) (Mem.) (vacating and remanding for further consideration in light of *Gill*). Beyond the likelihood that proceeding now will result in a third trial, "fairness to the litigants and the courts" requires that a case be "considered and judged" under the correct legal standard. *Fisher v. Univ. of Texas at Austin,* 570 U.S. 297, 314 (2013).

Citing *Common Cause v. Rucho,* Nos. 1:16-cv-1026, 1:16-cv-1164, 2017 WL 3981300 (M.D.N.C. Sept. 8, 2017), Plaintiffs surmise that the Supreme Court could decide *Rucho* and *Benisek* "without providing this Court any additional guidance as to how to resolve the claims at issue in the instant cases." *Id.* at 5. But *Rucho*'s protracted procedural history is proof alone that a stay is warranted. When *Rucho* was in the same procedural situation this case is in now, the *Rucho* district court refused to stay proceedings pending the Supreme Court's decision in *Gill*. It did so because of distinctions between *Rucho* and *Gill*. *See Rucho,* 2017 WL 3981300, at *1.[4] The parties completed discovery, conducted a four-day trial, and submitted "extensive" post-trial

---

[4] Relatedly, the *Rucho* district court drew a distinction between *Rucho* and *Gill* that is now gone: "To begin, the plaintiffs in *Whitford* lodged a statewide challenge to the legislative redistricting plans, notwithstanding that the plaintiffs did not reside in all of the challenged districts," and "the Supreme Court could dispose of *Whitford* on standing grounds without addressing the merits, thereby providing this Court with no additional guidance regarding the viability of and framework for evaluating partisan gerrymandering claims." 2017 WL 3981300, at *4. That distinction perhaps counseled against a stay in *Rucho*, but cannot counsel against a stay here now that Plaintiffs have amended their complaint to challenge Act 43 on a district-by-district basis.

3

briefs—just as Plaintiffs want to do here. *See Common Cause v. Rucho*, 284 F. Supp. 3d 780, 783 (M.D.N.C. 2018). The district court then enjoined North Carolina's redistricting plan and denied defendants' motion for a stay pending appeal. *See id.* at 782*; but see Common Cause v. Rucho*, 138 S. Ct. 923 (2018) (Mem.) (granting a stay pending appeal). After all that, the Supreme Court vacated the district court's decision and remanded for further consideration in light of *Gill*, 138 S. Ct. 2679 (2018) (Mem.), and the case is once again back before the Supreme Court.

The far more sensible course was that taken by the *Benisek* district court. There, the court *sua sponte* stayed proceedings after the Supreme Court set *Gill* for argument. *See Benisek v. Lamone*, 266 F. Supp. 3d 799, 801 (D. Md. 2017). Acknowledging some distinctions between the cases, the court nevertheless concluded that the ultimate question in both cases was the same: whether the alleged political gerrymander "actually inflicted a constitutional injury on [plaintiffs], one that is sufficiently personal so as to satisfy the threshold requirements of Article III and sufficiently definite and clear so as to justify the drastic remedy of an injunction against enforcement of an otherwise lawfully enacted map." *Id.* at 814. The court also recognized that the stay would have benefits even if the Supreme Court's decision did not resolve all of the outstanding issues in *Benisek*. Specifically, the Court held, "[w]hile the Supreme Court's decision in *Whitford* may not prove dispositive of *Benisek*, the Court's analysis will undoubtedly shed light on critical questions in this case,

4

and the parties and the panel will be served by awaiting that guidance." *Id.* at 815; *see also id.* at 806 ("Guidance of some sort (maybe dispositive guidance) is forthcoming" and to proceed without that guidance "would place the cart far ahead of the horse."). So too here.

Plaintiffs contend that the issues in these three cases "are not so similar that a decision in either case would necessarily resolve the claims at issue in the cases at hand" because the cases involve "distinct framework[s] for assessing partisan gerrymandering claims." Opp'n 4. But the *Benisek* district court rejected this very argument: As "the divergent opinions in *Vieth* illustrate, the Justices are not bound to decide [these cases] along the lines that the [district courts] found persuasive." 266 F. Supp. 3d at 815-16. Indeed, "the Justices certainly may adopt, co-opt, modify, or otherwise incorporate elements of [the district courts'] theor[ies] into a framework or decision or a possible framework for future cases." *Id.* As in *Benisek*, awaiting the Supreme Court's decisions on the *Rucho* and *Lamone* frameworks "insure[s] that [this Court] is proceeding on the correct legal foundation" and "proper legal standard." *Id.* at 816. And of course, if the Supreme Court announces the legal standard for partisan gerrymandering claims in its *Rucho* or *Benisek* decisions, that standard will bind the parties here irrespective of the standard litigated until now.

Ultimately, Plaintiffs have no answer to the Assembly's argument that the interest in judicial economy decisively favors a stay. A stay here "avoid[s]

5

unnecessary duplication of judicial machinery." *See Texas Ind. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005). Discussed further below, Plaintiffs' desire to proceed is "greatly outweighed by the efficiency costs of charging ahead only to later learn that Plaintiffs must return to square one (or, perhaps, that their action is no longer viable)." *Benisek*, 266 F. Supp. 3d at 816.

## II. Plaintiffs' Speculations About Supreme Court Review Are Not Grounds to Deny the Stay

Plaintiffs' only interest in proceeding is to ensure "a Supreme Court appeal during the 2019-2020 term." Opp'n 1. Implicit in Plaintiffs' argument is the baseless notion that plenary Supreme Court review is Plaintiffs' only means of obtaining "meaningful relief." *Id.*

As an initial matter, Plaintiffs' concerns about prolonged litigation are entirely of their own making. The first set of *Whitford* plaintiffs waited four years to file suit challenging Act 43; most plaintiffs, including the ADCC, waited seven. Compounding the delay, the first set of Plaintiffs made the strategic decision to challenge Act 43 by alleging only statewide harm to group political interests, causing the Supreme Court to vacate this Court's first decision. *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018) ("[T]he fundamental problem with the plaintiffs' case as presented on this record" is that it is "about group political interests, not individual legal rights."). Further lengthening the delay, Plaintiffs waited months after the Supreme Court's remand to file new complaints raising an entirely new constitutional theory. *See also, e.g., Benisek*

6

*v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (finding plaintiffs did not show reasonable diligence in seeking preliminary injunction of Maryland map after waiting "six years, and three general elections, after the 2011 map was adopted, and over three years after the plaintiffs' first complaint was filed"). On these facts, standard principles of judicial economy and fairness—both facilitated by a stay—should not be sacrificed to satisfy Plaintiffs' speculative desire for plenary Supreme Court review next Term.

Indeed, Plaintiffs' desire for a timeline that facilitates plenary Supreme Court review should have no bearing on the Assembly's motion to stay.[5] Plaintiffs are not entitled to plenary Supreme Court review. *See* S. Ct. R. 18.12 ("Court may dispose summarily of the appeal on the merits"). And there is no reason to suspect that the Supreme Court would grant another round of plenary review in this case so soon after it exercises plenary review to decide the overlapping questions in *Rucho* and *Benisek*.

---

[5] Plaintiffs first raised this desire in their portion of the parties' Joint Rule 26(f) Report after Remand from The Supreme Court, months before the Supreme Court set *Rucho* and *Benisek* for argument. *See* Dkt. 213 at 6 ("Plaintiffs' counsel in both actions believe that a trial should occur no later than March 2019 so that the Court may issue an opinion that will allow an appeal to be heard by the United States Supreme Court in its 2019-2020 term."). Plaintiffs' contention that the Court "already weighed the competing interests at stake" when a single member of this Court conducted that scheduling conference is outlandish. Opp'n 2. The Supreme Court had not granted plenary review in *Rucho* and *Benisek*, no motion to stay was pending, and the Assembly plainly stated that while it would accept the dates in the Court's scheduling order if permitted to intervene, it would consider seeking a stay, depending on future developments in *Rucho*. Dkt. 215, Scheduling Conference Transcript at 19.

7

Nor is plenary Supreme Court review necessary for Plaintiffs to obtain "meaningful relief." Opp'n 2. As in every other redistricting case, "meaningful relief" is, at most, a decision from this Court in advance of the relevant election deadlines. At that point, either party could seek review from the Supreme Court, including on an emergency basis. For example, the *Baldus* district court issued its post-trial decision revising two Act 43 Assembly Districts on March 27, 2012, and issued its remedial order on April 11, 2012—only two months before the relevant Wisconsin election deadlines.[6] *See Baldus v. Brennan*, 849 F. Supp.2d 862 (E.D. Wis. 2012); *Baldus v. Brennan*, Case No. 11-CV-562 JPS-DPW-RMD, Dkt. 238. Likewise, Wisconsin's two most recent impasse cases resulting in court-drawn maps were decided even later in the election year. *See Baumgart v. Wendelberger*, Case No. 01-C-0121, 2002 WL 34127471 (E.D. Wis. May 30, 2002); *Prosser v. Elections Bd.*, 793 F. Supp. 859 (W.D. Wis. 1992) (adopting reapportionment plan for state assembly on June 2, 1992). But here, even with a stay, Plaintiffs are likely to have a decision from this Court many months before the relevant election deadlines, if not sooner.[7]

---

[6] State law requires nomination papers to be filed by June 1, 2020. Wis. Stat. § 8.15(1). The fall 2020 primary election is on August 11, 2020. Wis. Stat. § 5.02(12s).

[7] Should this Court enter a stay, after the Supreme Court decisions, the parties would need a short amount of time to complete remaining discovery and other pretrial tasks (if necessary). Even if the schedule for those tasks is not expedited, trial could occur at the end of September, if not earlier, and a decision would be rendered far in advance of the timeline in *Baldus.*

Plaintiffs' desired timeline would actually *extend* the time until there is a final adjudication of Plaintiffs' claims, thereby frustrating their asserted interest in obtaining relief before the 2020 election. If this case is tried on the wrong legal standard—as would almost certainly occur should the trial proceed in April—the Supreme Court will likely vacate any decision predicated on that trial, related discovery, and post-trial briefing.[8] *See supra*, at 2–3. That poses the *Jarndyce v. Jarndyce*-esque possibility that this Court must try Plaintiffs' claim for a third time. Only then would Plaintiffs be able to seek their desired plenary Supreme Court review, during which any order invalidating Act 43 would likely be stayed. *See, e.g.*, *Common Cause v. Rucho*, 138 S. Ct. 923 (2018) (Mem.) (granting a stay pending appeal); *Gill v. Whitford*, 137 S. Ct. 2289 (2017) (Mem.) (same); *Sixty-Seventh Minnesota State Senate v. Beens*, 406 U.S. 187, 193 (1972) (noting that the Court granted a stay pending appeal); *Benisek v. Lamone*, Civil No. JKB-13-3233, Dkt. 230 (D. Md. Nov. 16, 2018) (granting a stay pending appeal).

On the other hand, staying proceedings so that the parties and this Court may use the rules announced in *Rucho* and *Benisek* makes a summary affirmance by the Supreme Court possible. That stay would still enable Plaintiffs to obtain a decision from this Court well in advance of the 2020 election. Plaintiffs would have roughly five months, if not more, to seek

---

[8] And as part of those proceedings before the Supreme Court, the Assembly would seek a stay pending appeal.

9

Supreme Court review, including on an emergency basis, before the June 2020 filing deadline. *See supra*, 8, nn. 6, 7.

## Conclusion

Without a stay, the likelihood that a third trial would be necessary if the *Rucho* or *Benisek* plaintiffs prevail is high. The likelihood that the second trial would be entirely unnecessary if *Rucho* or *Benisek* plaintiffs do not prevail is even greater. The Wisconsin State Assembly respectfully requests that the Court immediately stay all further proceedings in these cases pending the Supreme Court's disposition of *Rucho* and *Benisek*.

| | |
|---|---|
| January 16, 2019 | **BARTLIT BECK LLP** |
| | /s/ Joshua P. Ackerman<br>Adam K. Mortara, SBN 1038391<br>Joshua P. Ackerman<br>Taylor A.R. Meehan<br>54 W. Hubbard Street<br>Chicago, IL 60654<br>Ph. 312-494-4400<br>Fax 312-494-4440<br>adam.mortara@bartlitbeck.com<br>joshua.ackerman@bartlitbeck.com<br>taylor.meehan@bartlitbeck.com |
| | **BELL GIFTOS ST. JOHN LLC** |
| | /s/ Kevin St. John<br>Kevin St. John, SBN 1054815<br>5325 Wall Street, Suite 2200<br>Madison, WI 53718-7980<br>Ph. 608-216-7990<br>Fax 608-216-7999<br>kstjohn@bellgiftos.com |
| | *Attorneys for Wisconsin State Assembly* |